UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| VINCE ROWE, Derivatively On Behalf of THE ST. PAUL TRAVELERS COMPANIES, INC., f/n/a THE ST. PAUL COMPANIES, INC., | ) ) ) ) | Case No. 04-4576JRT/FLN |
| | ) ) | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF |
| Plaintiff, | ) ) ) | FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND |
| vs. | ) ) | UNJUST ENRICHMENT |
| JAY S. FISHMAN, ROBERT I. LIPP, HOWARD P. BERKOWITZ, KENNETH J. BIALKIN, CAROLYN HOGAN BYRD, JOHN H. DASBURG, LESLIE B. DISHAROON, JANET M. DOLAN, KENNETH M. DUBERSTEIN, LAWRENCE G. GRAEV, MERYL D. HARTZBAND, THOMAS R. HODGSON, WILLIAM H. KLING, JAMES A. LAWRENCE, BLYTHE J. MCGARVIE, GLEN D. NELSON, M.D., CLARENCE OTIS, JR., JEFFREY M. PEEK, NANCY A. ROSEMAN, CHARLES W. SCHARF, GORDON M. SPRENGER, FRANK J. TASCO and LAURIE J. THOMSEN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| - and - | ) ) | |
| THE ST. PAUL TRAVELERS COMPANIES, INC., f/n/a THE ST. PAUL COMPANIES, INC., a Minnesota corporation, | ) ) ) ) ) | |
| Nominal Defendant. | ) ) ) | DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.       This is a shareholder derivative action brought by a shareholder of The St. Paul Travelers Companies, Inc. ("St. Paul Travelers" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment that occurred between November 17, 2003 and the present (the "Relevant Period") and that have caused substantial losses to St. Paul Travelers and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive one to confer jurisdiction on this Court it would not otherwise have.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.       This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with Minnesota so as to render the exercise of jurisdiction by the Minnesota courts permissible under traditional notions of fair play and substantial justice.

4.       Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to St. Paul Travelers occurred in this District, and defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUMMARY OF THE ACTION

5.    This is a shareholder's derivative action on behalf of nominal defendant St. Paul Travelers against its entire Board of Directors (the "Board") for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. St. Paul Travelers was formed on April 1, 2004, when Travelers Property Casualty Corp. ("Travelers") and The St. Paul Companies, Inc. ("St. Paul") completed their previously announced merger. Over the past several months, defendants have seriously undermined St. Paul Travelers' valuable reputation by systematically causing and/or permitting the Company to engage in unlawful accounting methodologies and practices with respect to calculating reserves resulting in inflated earnings and asset figures. St. Paul Travelers' involvement in these transactions has already caused it to be sued for potentially millions of dollars in shareholder class actions.

6.    Defendants have deliberately, repeatedly and systematically failed to exercise independent or effective judgment and oversight of St. Paul Travelers' business and executives. Defendants participated in and/or approved of the conduct complained of herein to obtain the financial and social benefits of such positions for themselves, to enrich and further the personal and business interests of all defendants identified herein, and to allow many of the defendants to maintain their positions of control at St. Paul Travelers so that they would not be sued for their wrongdoing.

7.    All of these practices were designed and approved by St. Paul Travelers' senior management, including defendants named herein, to unlawfully ensure the success of the April 1, 2004 merger at the expense of St. Paul Travelers' long term value and St. Paul Travelers' shareholders.

8.    The Company may still be exposed to millions of dollars in civil damages from other outstanding litigation against the Company as a result of defendants' conduct. As a result of defendants' wrongful acts, St. Paul Travelers has already lost a significant amount of its value and

the Company has suffered and will continue to suffer severe damage to its reputation, goodwill and its ability to conduct future operations.

## THE PARTIES

9.      Plaintiff Vince Rowe is, and was at times relevant hereto, an owner and holder of St. Paul Travelers common stock.  Plaintiff Rowe is a citizen of Texas.

10.      Nominal defendant St. Paul Travelers is a corporation organized and existing under the laws of the state of Minnesota with its headquarters located at 385 Washington St., Saint Paul, Minnesota 55102.  St. Paul Travelers provides commercial property-casualty insurance, personal property-casualty insurance and asset management services.

11.      Defendant Jay S. Fishman ("Fishman") is, and at all times relevant hereto was, a director and Chief Executive Officer ("CEO") of St. Paul Travelers.  Fishman previously served as the Chairman of the Board, President and CEO of St. Paul from October 2001, until the merger on April 1, 2004.  Because of Fishman's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Fishman participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings.  For FY:03, St. Paul Travelers paid defendant Fishman $3,464,106, in salary, bonus and other compensation, awarded him 12,795 restricted shares, and granted him 600,000 options to purchase St. Paul Travelers' stock.  Fishman is a citizen of Minnesota.

12.      Defendant Robert I. Lipp ("Lipp") is, and at all times relevant hereto was, the Chairman of the Board of St. Paul Travelers.  Lipp previously served as CEO and Chairman of the Board of Travelers from December 2001, until the merger on April 1, 2004.  Because of Lipp's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as

well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Lipp participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Lipp is a citizen of New York.

13.     Defendant Howard P. Berkowitz ("Berkowitz") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Berkowitz previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Berkowitz's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Berkowitz participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Berkowitz is a citizen of New York.

14.     Defendant Kenneth J. Bialkin ("Bialkin") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Bialkin previously served as a director of Travelers from May 2002, until the merger on April 1, 2004.  Because of Bialkin's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Bialkin

participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Bialkin is a citizen of New York.

15.     Defendant Carolyn Hogan Byrd ("Byrd") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Byrd previously served as a director of St. Paul from May 2001, until the merger on April 1, 2004.  Because of Byrd's positions, she knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Byrd participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Byrd is a citizen of Georgia.

16.     Defendant John H. Dasburg ("Dasburg") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Dasburg previously served as a director of St. Paul from February 1994, until the merger on April 1, 2004.  Because of Dasburg's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Dasburg participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Dasburg is a citizen of Minnesota.

17.     Defendant Leslie B. Disharoon ("Disharoon") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Disharoon previously served as a director of Travelers from May 2002, until the merger on April 1, 2004.  Because of Disharoon's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access

to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Disharoon participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Disharoon is a citizen of Virginia.

18.    Defendant Janet M. Dolan ("Dolan") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Dolan previously served as a director of St. Paul from May 2001, until the merger on April 1, 2004.  Because of Dolan's positions, she knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Dolan participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Dolan is a citizen of Minnesota.

19.    Defendant Kenneth M. Duberstein ("Duberstein") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Duberstein previously served as a director of St. Paul from May 1998, until the merger on April 1, 2004.  Because of Duberstein's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Duberstein participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Duberstein is a citizen of Wisconsin.

20.     Defendant Lawrence G. Graev ("Graev") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Graev previously served as a director of St. Paul from May 2002, until the merger on April 1, 2004.  Because of Graev's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Graev participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Graev is a citizen of New York.

21.     Defendant Meryl D. Hartzband ("Hartzband") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Hartzband previously served as a director of Travelers from September 2002, until the merger on April 1, 2004. Because of Hartzband's positions, she knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Hartzband participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Hartzband is a citizen of New York.

22.     Defendant Thomas R. Hodgson ("Hodgson") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Hodgson previously served as a director of St. Paul from August 1997, until the merger on April 1, 2004.  Because of Hodgson's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and

employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Hodgson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Hodgson is a citizen of Illinois.

23.     Defendant William H. Kling ("Kling") is, and at all times relevant hereto was, a director of St. Paul Travelers. Kling previously served as a director of St. Paul from November 1989, until the merger on April 1, 2004. Because of Kling's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Kling participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Kling is a citizen of Minnesota.

24.     Defendant James A. Lawrence ("Lawrence") is, and at all times relevant hereto was, a director of St. Paul Travelers. Lawrence previously served as a director of St. Paul from May 2003, until the merger on April 1, 2004. Because of Lawrence's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Lawrence participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Lawrence is a citizen Minnesota.

25.     Defendant Blythe J. McGarvie ("McGarvie") is, and at all times relevant hereto was, a director of St. Paul Travelers. McGarvie previously served as a director of Travelers from July 2003, until the merger on April 1, 2004. Because of McGarvie's positions, she knew the adverse

non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.   During the Relevant Period, McGarvie participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  McGarvie is a citizen of Virginia.

26.     Defendant Glen D. Nelson, M.D., ("Nelson") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Nelson previously served as a director of St. Paul from May 1992, until the merger on April 1, 2004.  Because of Nelson's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Nelson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Nelson is a citizen of Minnesota.

27.     Defendant Clarence Otis, Jr. ("Otis") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Otis previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Otis' positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Otis participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Otis is a citizen of Florida.

28.     Defendant Jeffrey M. Peek ("Peek") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Peek previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Peek's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Peek participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Peek is a citizen of New York.

29.     Defendant Nancy A. Roseman ("Roseman") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Roseman previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Roseman's positions, she knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Roseman participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Roseman is a citizen of Massachusetts.

30.     Defendant Charles A. Scharf ("Scharf") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Scharf previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Scharf's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other

information provided to him in connection therewith.  During the Relevant Period, Scharf participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Scharf is a citizen of New York.

31.     Defendant Gordon M. Sprenger ("Sprenger") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Sprenger previously served as a director of St. Paul from May 1995, until the merger on April 1, 2004.  Because of Sprenger's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Sprenger participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Sprenger is a citizen of Minnesota.

32.     Defendant Frank J. Tasco ("Tasco") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Tasco previously served as a director of Travelers from May 2002, until the merger on April 1, 2004.  Because of Tasco's positions, he knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Tasco participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Tasco is a citizen of New York.

33.     Defendant Laurie J. Thomsen ("Thomsen") is, and at all times relevant hereto was, a director of St. Paul Travelers.  Thomsen previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Because of Thomsen's positions, she knew the adverse non-public information about the business of St. Paul Travelers, as well as its aggressive accounting

methodologies and practices, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Thomsen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Thomsen is a citizen of Massachusetts.

34.     The defendants identified in ¶¶11-33 are referred to herein as the "Director Defendants."  The defendant identified in ¶11 is referred to herein as the "Officer Defendant."  Collectively, the Director Defendants and the Officer Defendant are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

35.     By reason of their positions as officers, directors and/or fiduciaries of St. Paul Travelers and because of their ability to control the business and corporate affairs of St. Paul Travelers, the Individual Defendants owed St. Paul Travelers and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage St. Paul Travelers in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of St. Paul Travelers and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

36.     Each director and officer of the Company owes to St. Paul Travelers and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of St. Paul Travelers, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with St. Paul Travelers, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of St. Paul Travelers.

38.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of St. Paul Travelers, and was at all times acting within the course and scope of such agency.

39.     To discharge their duties, the officers and directors of St. Paul Travelers were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of St. Paul Travelers were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)      remain informed as to how St. Paul Travelers conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)      ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

40.      Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of St. Paul Travelers, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of St. Paul Travelers' Board during the Relevant Period.

41.      The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws.  As a result, St. Paul Travelers has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)      Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)      Costs incurred in investigating and defending St. Paul Travelers and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

42.      Moreover, these actions have irreparably damaged St. Paul Travelers' corporate image and goodwill.  For at least the foreseeable future, St. Paul Travelers will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that St. Paul Travelers' ability to raise equity capital or debt on favorable terms in the future is now impaired.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

43.      In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

44.      During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at St. Paul Travelers and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of St. Paul Travelers, regarding the Individual Defendants' management of St. Paul Travelers' operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

45.      The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least November 2003 and continuing thereafter.

During this time the Individual Defendants caused the Company to conceal the true fact that St. Paul Travelers was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about St. Paul Travelers' financial performance and future business prospects, as alleged herein.

46.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of St. Paul Travelers common stock so they could: (i) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof; and (ii) use the artificially inflated Company stock to give the appearance the merger into St. Paul Travelers was a success.

47.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

48.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

49.     St. Paul Travelers is engaged, through its subsidiaries, in providing commercial property-liability insurance products and services. Its property-liability insurance operations

- 16 -

underwrite insurance and provide insurance-related products and services to commercial and professional customers throughout the United States and in selected international markets.

## IMPROPER STATEMENTS

50.     On November 17, 2003, the Individual Defendants caused St. Paul and Travelers to announce that they had signed a definitive merger agreement that would create the nation's second largest commercial insurer, to be known as The St. Paul Travelers Companies. The combined company would be a leading provider of property casualty insurance products distributed through independent agents and brokers and one of the largest financial services companies in the United States.  It was expected to have total assets of $107 billion, shareholders' equity of $20 billion, total capital of $26 billion and net written premiums of $20 billion. With unparalleled product breadth and geographic reach, the combined entity would be uniquely positioned as the property casualty insurer of choice for agents, brokers and customers across the United States.

51.     The Individual Defendants caused the Company to further state:

The Board of each company has unanimously agreed to the tax-free, stock-for-stock merger. Under the terms of the merger agreement, holders of Travelers Class A and Class B common stock will each receive 0.4334 St. Paul common shares for each Travelers share. The combined company is expected to pay dividends at the annual rate of $0.88 per share. In addition, The St. Paul expects to pay a special dividend to its shareholders prior to the closing, so that in 2004, shareholders of The St. Paul will receive dividends amounting to The St. Paul's current indicated annual rate of $1.16 per share. The transaction is subject to customary closing conditions, including the approval by the shareholders of both companies as well as certain regulatory approvals. The transaction is expected to close in the second quarter of 2004.

The St. Paul Travelers Companies will remain a Minnesota corporation and will have its corporate headquarters in Saint Paul, Minnesota. The specialty insurance lines, which will be known as St. Paul Specialty, will be based in Saint Paul. The St. Paul's international business will continue to be based in London. The combined company's commercial lines and personal lines business will be consolidated under the Travelers brand and based in Hartford, Connecticut. The company will also continue to own The St. Paul's nearly 80 percent interest in Nuveen Investments, an asset management company serving affluent and high net worth investors.

Jay S. Fishman, 51, chairman and chief executive officer of The St. Paul, will serve as chief executive officer of the combined company, reporting to the new Board. Robert I. Lipp, 65, chairman and chief executive officer of Travelers, will serve as the company's executive chairman until January 1, 2006, at which time it is anticipated that Mr. Fishman will become chairman as well as chief executive

officer. The new Board will consist of all current outside directors of both companies as well as Mr. Lipp and Mr. Fishman, resulting in a total of 12 directors from Travelers and 11 from The St. Paul.

52.     On February 13, 2004, the Individual Defendants caused St. Paul to file a joint

proxy statement/prospectus/registration statement ("Proxy/Registration Statement").  The

Proxy/Registration Statement was signed by the Individual Defendants. Therein, St. Paul stated:

>     Upon completion of the merger, holders of Travelers Class A common stock and Travelers Class B common stock will be entitled to receive 0.4334 of a share of St. Paul Travelers common stock for each share of Travelers Class A common stock and Travelers Class B common stock (see "The Merger- Structure of the Merger"). For accounting purposes, this transaction will be accounted for as a reverse acquisition with Travelers as the accounting acquirer. Accordingly, St. Paul Travelers will account for the transaction as a purchase business combination, using Travelers historical financial information and accounting policies and applying fair value estimates to the acquired assets, liabilities and commitments of St. Paul as of the date of the transaction.

53.     Additionally, the Proxy/Registration Statement provided historical balance sheets of

both St. Paul and Travelers, individually as of September 30, 2003.   Moreover, the

Proxy/Registration Statement also included an unaudited pro forma condensed combined balance

sheet as of September 30, 2003, which combined the historical consolidated balance sheets of St.

Paul and Travelers, giving effect to the merger as if it had been consummated on September 30,

2003.

54.     With respect to the pro forma condensed combined balance sheet, the Individual

Defendants caused St. Paul to state the following:

>     For accounting purposes, this transaction will be accounted for as a reverse acquisition with Travelers as the accounting acquirer. Accordingly, St. Paul Travelers will account for the transaction as a purchase business combination, using Travelers historical financial information and accounting policies and applying fair value estimates to the acquired assets, liabilities and commitments of St. Paul as of the date of the transaction.
>
>     The selected preliminary unaudited pro forma combined financial information which follows reflects the purchase method of accounting and is intended to provide information regarding how the companies might have looked had St. Paul and Travelers actually been combined as of the dates indicated. The preliminary selected unaudited pro forma combined financial information does not reflect the effect of revenue enhancements, expense efficiencies, synergies or asset dispositions that may result from the merger. The preliminary selected unaudited pro forma combined financial information should not be relied upon as being indicative of the historical results that would have occurred had the companies been combined or the future results that may be achieved after the merger.

The following selected preliminary unaudited pro forma combined financial information has been derived from, and should be read in conjunction with, the preliminary Unaudited Pro Forma Condensed Combined Financial Statements and related notes that begin on page 128. The preliminary Unaudited Pro Forma Condensed Combined Balance Sheet combines the historical consolidated balance sheet of St. Paul and the historical consolidated balance sheet of Travelers as of September 30, 2003, giving effect to the merger as if it had been consummated on that date. The preliminary Unaudited Pro Forma Condensed Combined Statements of Income combine the historical consolidated statements of income of St. Paul and Travelers for the nine months ended September 30, 2003 and the year ended December 31, 2002, giving effect to the merger as if it had occurred on January 1, 2002. We have adjusted the historical consolidated financial information to give effect to pro forma events that are (1) directly attributable to the merger, (2) factually supportable, and (3) with respect to the statements of income, expected to have a continuing impact on the combined results.

The preliminary unaudited pro forma adjustments represent management's estimates based on information available at this time. Actual adjustments to the combined balance sheet and income statements will differ, perhaps materially, from those reflected in these preliminary Unaudited Pro Forma Condensed Combined Financial Statements because the assets and liabilities of St. Paul will be recorded at their respective fair values on the date the merger is consummated, and the preliminary assumptions used to estimate these fair values may change between now and the completion of the merger.

55.     With respect to the "[c]laims and claim adjustment expense reserve" line, St. Paul represented that the "$720 million" of reduction in reserves for St. Paul Travelers "[r]epresent[ed] adjustments to conform St. Paul's accounting policy to that of Travelers" as well as "adjustments for fair value."

56.     On March 19, 2004, Travelers announced that its shareholders had voted to approve the Agreement and Plan of Merger, as amended, among Travelers, The St. Paul Companies, Inc. and a wholly owned subsidiary of The St. Paul, and the merger contemplated by that agreement.

57.     On April 1, 2004, St. Paul Travelers completed the merger that combined St. Paul and Travelers.  Beginning April 2, 2004, St. Paul Travelers stock would be listed on the New York Stock Exchange under the symbol "STA." The combined company was uniquely positioned as the commercial insurer of choice for independent agents and brokers across the United States. Commenting on the completion of the merger, defendant Fishman stated:

"This combination of two industry leaders positions us to better fulfill our commitment to serve independent agents and brokers and our insured customers," said Jay S. Fishman Chief Executive Officer of St. Paul Travelers.  "We are grateful for the strong support for this merger demonstrated by shareholders, agents, brokers,

employees and the communities we serve. We are excited to now move forward as one entity that has the experience and resources of both companies, coupled with an unsurpassed breadth of insurance products."

58.     Further commenting on the merger, defendant Lipp stated:

"St. Paul Travelers brings together the best of both companies, including skilled and dedicated employees with similar performance-based cultures and underwriting skills. The merger also creates a stronger national distribution network across all product lines," said Robert I. Lipp, Chairman of St. Paul Travelers. "We look forward to exploring the expanded opportunities available to the independent agents and brokers we serve, created through St. Paul Travelers' broad product array and our continued appetite for growth."

59.     The statements referred to herein were materially false and misleading and failed to disclose, among other things, the following: (i) that the merger between St. Paul and Travelers was far from a "merger of equals" and was more representative of a "bailout" of St. Paul; (ii) that the Individual Defendants knew and/or recklessly disregarded the fact that St. Paul's insurance methodologies and practices with respect to those used to calculate reserves were less conservative than those of Travelers and if revealed, would impair the success of the merger; (iii) that as a consequence of the forgoing, the Company's reserve reduction was materially insufficient; and (iv), as such, St. Paul Travelers' earnings and assets were materially overstated at all relevant times.

## REASONS THE STATEMENTS WERE IMPROPER

60.     On July 23, 2004, the Individual Defendants caused the Company to drop a bombshell on the market in a press release entitled "St. Paul Travelers Announces Ranges of Estimated Earnings." The press release stated in part:

The St. Paul Travelers Companies, Inc. (St. Paul Travelers) was formed on April 1, 2004, when Travelers Property Casualty Corp. (Travelers) and The St. Paul Companies, Inc. (St. Paul) completed the previously announced merger. For accounting purposes, Travelers is the accounting acquirer. Consequently, the historic accounting and actuarial methods of St. Paul are being conformed to those of Travelers and all St. Paul assets and liabilities are being recorded at fair value on the opening balance sheet.

St. Paul Travelers will make certain reserve valuation adjustments following the merger. The company has requested guidance from the Securities and Exchange Commission (SEC) on how an insurance company should account for certain reserve valuation adjustments, in light of the requirements of Statement of Financial Accounting Standards No. 141 (FAS 141), Business Combinations. FAS 141 indicates that these adjustments should be reflected on the opening balance sheet, which would result in the adjustments not being reflected in the income statement. Prior to the issuance of FAS 141, under certain circumstances, reserve valuation

adjustments in a purchase business combination were recorded through the income statement.

The reserve valuation adjustments for which the company has sought guidance total $1.625 billion. If it is determined that these reserve valuation adjustments should be reflected on the opening balance sheet and not reported in the income statement, St. Paul Travelers expects to report second quarter 2004 net income in the range of $775 million to $800 million, or $1.16 to $1.20 per basic share and $1.13 to $1.16 per diluted share. Second quarter 2004 operating income would be in the range of $740 million to $765 million, or $1.11 to $1.15 per basic share and $1.08 to $1.11 per diluted share. In this case, the reserve valuation adjustments are assumed to result in an increase to goodwill. The difference in net income and operating income represents $35 million, after-tax, of realized investment gains.

If it is determined that these reserve valuation adjustments should be reflected in the income statement in the second quarter, St. Paul Travelers expects to report a second quarter 2004 net loss in the range of $275 million to $300 million, or $0.42 to $0.45 per basic and diluted share. Second quarter 2004 operating loss would be in the range of $310 million to $335 million, or $0.47 to $0.51 per basic and diluted share. The difference in net loss and operating loss represents $35 million, after-tax, of realized investment gains.

A third alternative could occur if it is determined that some of the reserve adjustments should be reported in the income statement and some should be recorded as purchase accounting adjustments on the opening balance sheet. Under such a scenario, the estimated range of results would be between the two ranges mentioned above for both net and operating income or loss.

Under any of the three alternatives the company will not raise additional capital -- an indication of the financial strength of the company.

Jay Fishman, chief executive officer of St. Paul Travelers, said, "This second quarter is the first period in which St. Paul Travelers has operated as a combined firm and is reporting as one entity. From an operating perspective, we are off to an excellent start. We are very pleased with our agents' reactions to the transaction, and continue to see new opportunities from our broader offering of products and services. In addition, we have identified the specific actions that we plan to take that will allow us to meet our previously disclosed cost savings estimate of $350 million."

61.     Additionally, the press release stated:

Conforming Adjustments:

--Surety reserves--Travelers and St. Paul used different approaches in calculating surety reserves. For example, the method previously used by St. Paul in its surety business was to establish claims and claim adjustment expense reserves for each bond when it is determined that the individual project is not likely to be completed in accordance with its terms (i.e., reserves are evaluated on a project-by-project basis). Under the Travelers method, claims and claim adjustment expense reserves are established when it is determined that a contractor is not likely to be capable of completing its bonded obligations in accordance with their respective terms (i.e., reserves are evaluated on a contractor-by-contractor basis). The required adoption of the Travelers method for calculating St. Paul's surety claims and

claim adjustment expense reserves resulted in an increase in surety reserves of $300 million, net of reinsurance. This conforming adjustment also resulted in a $75 million increase in other liabilities due to a related reinsurance reinstatement premium.

--Construction reserves--Travelers has a long-established unit that tracks, disaggregates, and studies construction claims. Travelers disaggregated St. Paul's claim data as of the acquisition date, applied its experience factors to those claims and developed an estimate of ultimate losses consistent with Travelers evaluation of loss experience. This resulted in an increase of $400 million and $100 million, net of reinsurance, for prior year reserves related to construction defect claims and construction wrap-up exposures, respectively. Construction defect claims relate predominately to property damage claims that result from errors a contractor makes during a project that are not known until after the project is completed. Construction wrap-up exposures relate to insurance programs, such as workers compensation and general liability, for construction projects in which all contractors working on such a project are covered under the programs.

--Reserves for uncollectible reinsurance and amounts due from policyholders and co-surety participants--The methods used to calculate reserves for uncollectible reinsurance and reserves for uncollectible amounts due from policyholders and co-surety participants also differed between the two companies. The companies used different default rate charges and different procedures for estimating adjustments, including those related to potential disputed amounts. Adjustments required to conform the historical GAAP accounting methods of St. Paul to those of Travelers resulted in an increase in reserves of $295 million for uncollectible reinsurance and uncollectible amounts due from policyholders and co-surety participations.

Net Strengthening of Surety Reserves Due to Financial Condition of a Construction Contractor:

In response to first quarter developments that included requests for additional advances by a specific construction contractor and that resulted in a first quarter 2004 charge by St. Paul, a comprehensive update of exposure to this construction contractor was completed. Detailed reviews performed by independent engineering and accounting firms resulted in increases in estimates of costs to complete the contractor's existing projects. St. Paul Travelers also performed analyses of the contractor's business and financial condition, the impact of various completion options on the cost to complete bonded projects, liquidated damages, reinsurance recoveries, co-surety participation and collateral. Based upon these analyses, St. Paul Travelers recorded an increase of $250 million to its surety reserves, net of reinsurance and co-surety participation. As described above, the company increased reserves for estimated costs in the event that a co-surety cannot meet its obligations.

Change in Reinsurance Recoverables Due to Commutation of Specific Reinsurance Arrangements:

On June 30, 2004, St. Paul Travelers entered into a commutation with a major reinsurer of certain of St. Paul's reinsurance agreements, in which discussions commenced prior to April 1, 2004. The settlement, which was effective retroactively to April 1, 2004, was for approximately $155 million less than St. Paul's pre-acquisition recoverable on its balance sheet. Under the terms of the agreement, St. Paul Travelers received approximately $867 million in cash from the reinsurer.

Net Increase in Other Claims and Claim Adjustment Expense Reserves:

This $50 million net increase relates to other reserving changes that are similar in nature but smaller in dollar amount than those described above.

62.     On news of this, shares fell $0.89 per share, or 2.44 percent, to close at $35.66 per share on July 23, 2004.

63.     Then on August 4, 2004, Jesse Eisinger of *The Wall Street Journal* wrote an article entitled "Travelers' Shareholders Get Caught In a Storm With St. Paul Acquisition." In the article, Eisinger wrote:

> Investors in Travelers have needed more than that red umbrella for protection from what has been raining down on them since the company was spun out from Citigroup in early 2002. Late last month, St. Paul Travelers Cos., the insurer formed in April when Travelers closed its puzzling $17.8 billion deal to buy a shaky St. Paul Cos., announced what Morgan Stanley termed a "blockbuster reserve charge" of $1.625 billion.

> The charge was about twice as large as analysts had been expecting. The insurer contends that the charge stems largely from the need to reconcile differing accounting treatments at the two companies. It was just a "reserve valuation adjustment," the company said. The ratings agencies saw it for what it is: an addition to its reserves. Insurance companies do that when they have been too lax about writing business in the past.

> Executives at St. Paul Travelers, which reports quarterly earnings today, declined to comment.

> Sure, insurance companies mess up all the time. But it is becoming increasingly clear that the St. Paul takeover, which was a no-premium deal billed as a "merger of equals," has bitten Travelers' stockholders badly. Sadly, there seems to be little reason why Travelers' executives didn't anticipate problems with St. Paul's insurance methodologies and practices, particularly since Jay Fishman, the current chief executive officer of the new company, was CEO at St. Paul and had served as a top executive at both Citigroup and Travelers.

64.     The article further stated:

> Now investors wonder why Travelers didn't either lower the offering price sharply or walk away from the deal. St. Paul Travelers' stock has been pummeled, but, with only a few exceptions, analysts rushed to defend the charges and rally around the stock. When there is no evidence of accounting malfeasance, corporate irresponsibility gets a pass on Wall Street these days.

> \* \* \*

> Now investors are troubled that Travelers seems to have conducted limited and inadequate due diligence in acquiring St. Paul. The concern is that Mr. Fishman and Robert Lipp -- a longtime Citigroup executive who headed Travelers and is now

chairman of the new company -- merged their companies to solve succession issues at Travelers, without proper regard to shareholders.

On the conference call to explain the large charge, Mr. Fishman and Chief Financial Officer Jay Benet conceded some points. Asked if they had looked at the reserve policies during due diligence, Mr. Benet said: "We looked at the St. Paul book of business; we looked at the reserve profile. We knew, you know, what they were doing in the marketplace.... We recognized that early on that there was a difference in some of the methodologies that would have to be addressed."

If they knew, what took them so long to notify the Street? Insurance analysts say they began to get wind of the issue only in the middle of June. Even that strikes some insurance analysts and investors as too late. When Mr. Fishman arrived at St. Paul from Travelers, he says he discovered his new company used different methodology to calculate reserves. Well, differing methodologies sounds esoteric; this is essentially a matter of being conservative or aggressive about what the future will bring. Mr. Fishman said on the conference call, "It certainly would have been nice to have dealt with this and got it, in a sense, behind us."

To which a Travelers shareholder can only emphatically agree. St. Paul has a record of charges since Mr. Fishman arrived in 2001. Morgan Stanley calculates that since the third quarter of that year, St. Paul has amassed $4.1 billion in reserve increases. That amounts to a flabbergasting 45% of book value at the close of 2001. Had St. Paul taken such a write-off at once, the ratings agencies would have downgraded the insurer, putting the business at risk. Instead, St. Paul trickled out the charges judiciously and raised capital. Then, Mr. Fishman found a buyer: his old firm, which was willing to make him CEO.

65.     Then, on August 5, 2004, the Individual Defendants caused the Company to issue a press release entitled "St. Paul Travelers Reports Second Quarter Result." The press release stated in part:

The St. Paul Travelers Companies, Inc. today reported a net loss for the second quarter ended June 30, 2004 of $275 million, or $0.42 per basic and diluted share, compared to net income of $441 million or $1.02 per basic share and $1.01 per diluted share in the prior year quarter. The Company reported an operating loss of $310 million or $0.47 per basic and diluted share compared to operating income of $431 million or $0.99 per basic and diluted share in the prior year quarter. The current quarter net and operating losses include the after-tax impact of $1.048 billion of reserve adjustments and $26 million, after-tax, of restructuring costs related to the merger.

For the first six months of 2004, St. Paul Travelers reported net income of $312 million, or $0.56 per basic and diluted share, compared to $781 million or $1.80 per basic share and $1.79 per diluted share in the prior year period.

The difference between net and operating income (loss) is the inclusion in net income (loss) of net realized investment gains.

On April 1, 2004, Travelers Property Casualty Corp. ("Travelers") and The St. Paul Companies, Inc. ("St. Paul") completed their previously announced merger, and the combined company changed its name to The St. Paul Travelers Companies,

Inc. For accounting purposes, Travelers is required to be the accounting acquirer. Consequently, the historic accounting policies and actuarial methods of St. Paul were conformed to those of Travelers. Under purchase accounting rules, only current quarter results reflect the addition of St. Paul. All prior period results, including the first quarter 2004, reflect only the results of Travelers. All share and per share amounts have been restated to reflect the exchange of one share of Travelers common stock for 0.4334 shares of St. Paul Travelers common stock.

66.     Commenting on these results defendant Fishman stated:

"We are off to a great start operationally. I am particularly pleased with how well the field and claims organizations have come together. Our Commercial and Specialty businesses have made significant progress in delivering a broader product offering and our Personal business has experienced outstanding growth and performance. The rate environment continues to be favorable. All in all, I am optimistic about the future prospects for our business."

67.     On news of this, shares of St. Paul Travelers fell an additional $1.73 per share, or 4.74 percent, to close at $34.75 per share on August 5, 2004.

68.     As a result of the Individual Defendants' actions, St. Paul Travelers' market capitalization has been damaged by over $6.5 billion.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.     Plaintiff brings this action derivatively in the right and for the benefit of St. Paul Travelers to redress injuries suffered, and to be suffered, by St. Paul Travelers as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  St. Paul Travelers is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

70.     Plaintiff will adequately and fairly represent the interests of St. Paul Travelers in enforcing and prosecuting its rights.

71.     Plaintiff is and was an owner of the stock of St. Paul Travelers during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

72.     The current Board of St. Paul Travelers consists of the following twenty-three individuals: defendants Fishman, Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan,

Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen.  Plaintiff has not made any demand on the present Board of St. Paul Travelers to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)  The Governance Committee of the Board determines among other things, director compensation.  The Governance Committee is comprised of defendants Disharoon, Nelson, Dolan, Duberstein, Graev, Peek, Thomsen and Tasco.  As the members of the Governance Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Disharoon, Nelson, Dolan, Duberstein, Graev, Peek, Thomsen and Tasco.  To do so would jeopardize each defendant's personal financial compensation.  Thus, demand on defendants Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Otis, Roseman, Scharf and Sprenger is futile;

(b)  The principal professional occupation of defendant Fishman is his employment with St. Paul Travelers, pursuant to which he received and continues to receive substantial monetary compensations and other benefits.  Specifically, for FY:03, St. Paul Travelers paid defendant Fishman $3,464,106, in salary, bonus and other compensation, awarded him 12,795 restricted shares, and granted him 600,000 options to purchase St. Paul Travelers' stock.  Accordingly, defendant Fishman lacks independence from defendants Disharoon, Duberstein, Graev, McGarvie, Nelson and Peek, defendants who are not disinterested and/or independent and who exert influence over defendant Fishman's compensation by virtue of their position as the Compensation Committee.  This lack of independence renders defendant Fishman incapable of impartially considering a demand to commence and vigorously prosecute this action;

(c)  According to St. Paul Travelers' Proxy Statement filed with the SEC on or about June 10, 2004, defendants Tasco, McGarvie, Dasburg, Byrd, Hodgson, Kling, Otis and Thomsen were, during the Relevant Period, members of the Audit Committee.  The Audit Committee is responsible for monitoring the quality and integrity of the financial statements and public disclosures of the company, reviewing and recommending to the Board whether the financial

statements should be included in the Company's filings and reviewing and discussing with management the Company's earnings press releases. Nonetheless, the Audit Committee recommended that the Board include the improper audited consolidated financial statements in the joint Proxy/Registration Statement filed with the SEC on February 13, 2004. By such actions, defendants Tasco, McGarvie, Dasburg, Byrd, Hodgson, Kling, Otis and Thomsen breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them is futile;

(d)     The entire St. Paul Travelers Board and senior management participated in the wrongs complained of herein. St. Paul Travelers' directors are not disinterested or independent due to the following: defendants Fishman, Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan, Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen served on the St. Paul Travelers Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to St. Paul Travelers and its shareholders in that they failed to prevent and correct the improper financials. Thus, the St. Paul Travelers Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected St. Paul Travelers to millions of dollars in liability for possible violations of applicable securities laws;

(e)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper accounting, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(i)  ***Bialkin, Lipp and Scharf Are Long-Time Business Associates***:

Defendant Bialkin was a director of Citigroup from 1986 to 2002.  Defendant Lipp was the Chairman and Chief Financial Officer ("CFO") of Citigroup - Global Consumer Business from 1999 to 2000, and was Co-Chairman of Citigroup - Global Consumer Business from 1998 to 1999.  Defendant Scharf was the CFO of Citigroup - Corporate and Investment Bank from 1999 to 2000.  Because of their long-standing and entangling business and professional relationships, neither defendants Bialkin, Lipp nor Scharf will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(ii)  ***Dasburg and Lawrence Are Long-Time Business Associates***:

Defendant Dasburg served as President and CEO of Northwest Airlines from 1989 to 2000.  Defendant Lawrence served as the Executive Vice President and CFO of Northwest Airlines from 1996 to 1998.  Because of their long-standing and entangling business and professional relationships, neither defendant Dasburg nor defendant Lawrence will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(iii)  ***Kling and Nelson Are Long-Time Business Associates:***

Defendant Kling is the President and CEO of American Public Media Group ("APM").  APM is the parent of Minnesota Public Radio ("MPR"), where Kling has served as President and Trustee since 1973.  Defendant Nelson is a Trustee of MPR, and has been since 2001. Because of their long-standing and entangling business and professional relationships, neither defendant Kling nor defendant Nelson will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(iv)  ***Lipp and McGarvie Are Long-Time Business Associates***:

Defendant Lipp is a director of Accenture, Ltd., and has been since 2001.  Defendant McGarvie is also a director of Accenture, Ltd., and has been since 2001.  Because of their long-standing and entangling business and professional relationships, neither defendant Lipp nor defendant McGarvie will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(v)  ***Lipp, Otis, Roseman and Thomsen Are Long-Time Business Associates***:

Defendant Lipp is Trustee and President of the Executive Committee of Williams College, and has been since at least 2003.  Defendant Otis was a Trustee of Williams College from 1999 until his five year term ended in June 2004.  Defendant Roseman is the Dean of Williams College, and has been since 2000.  Defendant Thomsen is a Trustee and a member of the Finance Committee of Williams College, and has been since at least 2003.  Because of their long-standing and entangling business and professional relationships, neither defendants Lipp, Otis, Roseman nor Thomsen will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(vi)  ***Lipp and Scharf Are Long-Time Business Associates:***

Defendant Lipp is a director of Bank One Corporation, and has been since 2003.  Defendant Scharf is the CEO of Bank One Corporation's Retail Division, and has

been since 2002.  Because of their long-standing and entangling business and professional relationships, neither defendant Lipp nor defendant Scharf will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(vii)     ***Nelson and Sprenger Are Long-Time Business Associates***:

Defendant Nelson served as Vice Chairman and a director of Medtronic, Inc.,  from 1988 until 2002.  Defendant Sprenger is a director of Medtronic, Inc., and has been since 1991.  Because of their long-standing and entangling business and professional relationships, neither defendant Nelson nor defendant Sprenger will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(viii)     ***Peek and Otis Are Long-Time Business Associates***:

Defendant Peek was a member of the Group Executive Board of the Credit Suisse Group from 1983 to 2001.  The Credit Suisse Group has two divisions, one of which is Credit Suisse First Boston ("CSFB").  Defendant Otis served as Vice President, Public Finance at CSFB from 1987 to 1990.   Because of their long-standing and entangling business and professional relationships, neither defendant Peek nor defendant Otis will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(ix)     ***Bialkin Maintains Conflicting Financial Motivations:***

Defendant Bialkin is a director of St. Paul Travelers.  Bialkin previously served as a director of Travelers from May 2002, until the merger on April 1, 2004.  Defendant Bialkin is also a partner in the law firm of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden").  Skadden has provided legal services to Travelers since 2003, and continues to represent St. Paul Travelers after the merger.  Because of defendant Bialkin's long-standing and entangling business and professional relationship with St. Paul Travelers and Skadden, defendant Bialkin will not take the action requested by plaintiff herein against himself or the remainder of the Individual Defendants.

(x)     ***Berkowitz  Maintains Conflicting Financial Motivations***:

Defendant Berkowitz is a director of St. Paul Travelers.  Berkowitz previously served as a director of Travelers from September 2002, until the merger on April 1, 2004.  Defendant Berkowitz is also the CEO of BlackRock, Inc., an investment management firm, and has been since 2003.  Blackrock Inc.'s subsidiary, BlackRock HPB Management, LLC ("BlackRock"), is an investment management company for St. Paul Travelers.  Blackrock's fees are based on a percentage of the net assets they manage as well as performance.  Because of Berkowitz's entangling business, professional and financial conflicts, defendant Berkowitz will not take the action requested by plaintiff herein against himself, or the remainder of the Individual Defendants.

(xi)     ***Dasburg and KPMG Maintain A Debilitating Professional Relationship:***

Defendant Dasburg served as a Tax Partner for KPMG Peat Marwick from 1973 to 1980.  KPMG LLP has been named auditor of St. Paul Travelers and will serve in such capacity for fiscal year 2004.  Because of the long-standing and entangling

business and professional relationship defendant Dasburg maintains with KPMG, defendant Dasburg will not take the action requested by plaintiff herein requested by plaintiff herein against himself, or the remainder of the Individual Defendants.

(f)     St. Paul Travelers' non-employee Board members receive an annual retainer of $50,000, deferred stock and stock option awards.  On May 30, 2004, defendants Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan, Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen were each awarded deferred stock valued at $50,000, and were each granted options with a value of $40,000 whose exercise price is equal to the fair market value on the date of grant.  Both, the deferred stock and stock options vest one year from the date of grant.  Given that the value of the options for non-employee Board members Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan, Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen potentially run into the millions of dollars, one cannot realistically conclude that defendants Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan, Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen are able to objectively and impartially consider a demand to bring litigation against those to whom they are beholden to for their current position and future position on St. Paul Travelers' Board;

(g)     The deferred stock and stock options granted to non-employee defendant directors Lipp, Berkowitz, Bialkin, Byrd, Dasburg, Disharoon, Dolan, Duberstein, Graev, Hartzband, Hodgson, Kling, Lawrence, McGarvie, Nelson, Otis, Peek, Roseman, Scharf, Sprenger, Tasco and Thomsen, which are currently unvested, are so valuable that they create a considerable financial incentive for these directors to retain their positions as directors.  As a result, plaintiff contends that it is more reasonable to assume an individual who has already received, and who expects to receive still more options of such significant value could not objectively decide whether to commence legal proceedings against his or her fellow directors;

(h)     Each of the key officers and directors knew of and/or directly benefitted from the wrongdoing complained of herein;

(i)     The Director Defendants of St. Paul Travelers, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from St. Paul Travelers' stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(j)     In order to bring this suit, all of the directors of St. Paul Travelers would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(k)     The acts complained of constitute violations of the fiduciary duties owed by St. Paul Travelers' officers and directors and these acts are incapable of ratification;

(l)     Each of the Director Defendants of St. Paul Travelers authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(m)     Any suit by the current directors of St. Paul Travelers to remedy these wrongs would likely expose the Individual Defendants and St. Paul Travelers to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(n)     St. Paul Travelers has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for St. Paul Travelers any part of the damages St. Paul Travelers suffered and will suffer thereby;

(o)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile; and

(p)     If St. Paul Travelers' current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of St. Paul Travelers.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by St. Paul Travelers against these defendants, known as, *inter alia*, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of St. Paul Travelers, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause St. Paul Travelers to sue them, since they will face a large uninsured liability.

73.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for St. Paul Travelers for any of the wrongdoing alleged by plaintiff herein.

74.     Plaintiff has not made any demand on shareholders of St. Paul Travelers to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     St. Paul Travelers is a publicly held company with over 668 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiffs who have no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiffs to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT ONE

### Against All Defendants for Breach of Fiduciary Duty

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     The Individual Defendants owed and owe St. Paul Travelers fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendant and Director Defendants owed and owe St. Paul Travelers the highest obligation of good faith, fair dealing, loyalty and due care.

77.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

78.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results and assets of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

79.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, St. Paul Travelers has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

80.     Plaintiff on behalf of St. Paul Travelers has no adequate remedy at law.

## COUNT TWO

### Against All Defendants for Abuse of Control

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence St. Paul Travelers, for which they are legally responsible.

83.     As a direct and proximate result of the Individual Defendants' abuse of control, St. Paul Travelers has sustained significant damages.

84.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

85.     Plaintiff on behalf of St. Paul Travelers has no adequate remedy at law.

## COUNT THREE

### Against All Defendants for Gross Mismanagement

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of St. Paul Travelers in a manner consistent with the operations of a publicly held corporation.

88.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, St. Paul Travelers has sustained significant damages in excess of hundreds of millions of dollars.

89.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

90.     Plaintiff on behalf of St. Paul Travelers has no adequate remedy at law.

## COUNT FOUR

### Against All Defendants for Waste of Corporate Assets

91.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.     As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused St. Paul Travelers to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

93.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

94.     Plaintiff on behalf of St. Paul Travelers has no adequate remedy at law.

## COUNT FIVE

### Against All Defendants for Unjust Enrichment

95.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

96.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of St. Paul Travelers.

97.     Plaintiff, as a shareholder and representative of St. Paul Travelers, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of St. Paul Travelers has an effective remedy;

C.      Awarding to St. Paul Travelers restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: October 22, 2004                                    THE SPENCE LAW FIRM


                                                 _____/S/_____
                                                 RUSSELL M. SPENCE, JR.

                                                 10 South Fifth Street, Suite 700
                                                 Minneapolis, MN  55402
                                                 Telephone: 612/375-1555
                                                 Facsimile: 612/375-1511

                                                 ROBBINS UMEDA & FINK, LLP
                                                 BRIAN J. ROBBINS
                                                 JEFFREY P. FINK
                                                 1010 Second Ave., Suite 2360
                                                 San Diego, CA  92101
                                                 Telephone:  619/525-3990
                                                 Facsimile: 619/525-3991

                                                 Attorneys for Plaintiff

- 36 -

## VERIFICATION

I, Russell M. Spence, Jr. hereby declare as follows:

1)       I am a member of the Spence Law Firm, local counsel for plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.  I am informed and based upon information and belief, I believe the matters therein are true and on that ground allege that the matters stated therein are true.

2)       I make this Verification because plaintiff is absent from the County of Hennepin, City of Minneapolis where I maintain my office.

Executed this 22nd day of October, 2004, at Minneapolis, Minnesota.


_____/S/_____
RUSSELL M. SPENCE, JR.